# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DAVID OPPENHEIMER<br><br>Plaintiff,<br><br>v.<br><br>MAESTRO MUSIC, INC., DANESC, LLC, CLARKSON C. LOGAN, an individual, and DANIEL D. ESCOBAR, an individual,<br><br>Defendants. | **DEMAND FOR JURY TRIAL**<br><br>CIVIL ACTION NO. |

___

# COMPLAINT
___

Plaintiff David Oppenheimer ("Oppenheimer"), by and through his undersigned attorneys, states his claims against Defendants Maestro Music, Inc. ("Maestro"), DANESC, LLC ("Danesc"), Clarkson C. Logan ("Logan"), and Daniel D. Escobar ("Escobar") (collectively the "Defendants"), as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Oppenheimer is an individual who resides in Asheville, North Carolina.

1

2. Defendant Maestro is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at 800 Peachtree Street, Suite # 8604, Atlanta, Georgia 30308.  Defendant Maestro may be served through its registered agent, Clarkson Connerat Logan, at 2807 Atlantic Avenue, Savannah, Georgia, 31405.

3. Defendant Danesc is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 132 Generals Place, Canton, Georgia, 30114.  Defendant Danesc may be served through its registered agent, Daniel D. Escobar, at 132 Generals Place, Canton, Georgia, 30114.

4. Defendant Logan is an individual who, upon information and belief, resides in Savannah, Georgia.  Upon information and belief, Defenadnt Logan is the Chief Executive Officer of Defendant Maestro.  Defendant Logan may be served at his place of business at Maestro Music, Inc., 800 Peachtree Street, Suite # 8604, Atlanta, Georgia 30308.

5. Defendant Escobar is an individual who, upon information and belief, resides in Canton, Georgia.  Upon information and belief, Defendant Escobar is the Chief Technology Officer and Secretary of Defendant Maestro, and the Chief

Executive Officer of Defendant Danesc. Defendant Logan may be served at his place of business at DANESC, LLC 132 Generals Place, Canton, Georgia, 30114.

6. This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.* This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (copyright jurisdiction).

7. This Court has personal jurisdiction over Defendants by virtue of their presence in this District and their transacting, doing, and soliciting business in this District.

8. Venue is proper under 28 U.S.C. § 1391 (b)(1-2), (c)(1-2), and (d), and 28 U.S.C. § 1400(a).

## FACTUAL BACKGROUND

9. Oppenheimer is a professional photographer who makes his living taking, licensing, and selling prints of his photographs.

10. Between 2005 and 2012, Oppenheimer photographed a large number of musical artists and bands during live performances.

11. During that time, Oppenheimer displayed his photographs on the website he owned for his photography business at http://www.performanceimpressions.com/ (the "Website").

12. Oppenheimer displayed his copyright notice on every photograph at issue in this matter on the Website in the form of a visible watermark on the photograph. The copyright notice always included the copyright symbol, the date of first publication, and either his name or the name of his business.

13. At all times herein mentioned, Oppenheimer also included a copyright notice on every page of the Website notifying any viewer that the photographs on that page were protected by his copyright, and that he reserved all rights to the photographs.

14. In late 2012, Oppenheimer discovered that Defendants reproduced and displayed two hundred and forty-seven of his photographs (collectively the "First Group") on websites at https://s3.amazonaws.com ("Amazonaws.com") and at http://maestro.fm ("Maestro.fm") (as shown as Exhibit A).

15. Defendants cropped one hundred and forty-seven of the First Group photographs to remove or alter the copyright notice watermark before displaying them on Amazonaws.com and Maestro.fm.

16. On February 1, 2013, Oppenheimer, through his attorney, sent a letter to Defendant Maestro giving notice that the reproduction, display, and distribution of the First Group photographs on Maestro.fm and Amazonaws.com were

unauthorized and asking the Defendants to cease any use of the First Group photographs.

17. On October 28, 2014, Oppenheimer, through his attorney, notified Defendants of nine more of his photographs (as shown as Exhibit B, collectively the "Second Group") that were reproduced, displayed, and distributed by Defendants on Maesto.fm and Amazonaws.com without his authorization.

18. Subsequent to the notice on October 28, 2014, but prior to filing this lawsuit, Oppenheimer searched Maestro.fm and identified twenty-seven more of his photographs that were reproduced, displayed, and distributed by Defendants on Maestro.fm and Amazonaws.com without his authorization (as shown as Exhibit C, collectively the "Third Group").

19. In total, the First Group, the Second Group, and the Third Group (collectively the "Photographs") total two hundred eighty-three of Oppenheimer's photographs that Defendants reproduced, displayed, and distributed on Maestro.fm and Amazonaws.com without his authorization.

20. The Defendants accessed the Photographs through the Website.

21. As of the date of the filing of this lawsuit, the Defendants continue to reproduce, display, and distribute the First Group photographs on

Amazonaws.com, and the Third Group photographs on Maestro.fm and Amazonaws.com.

22. Defendants displayed the Photographs on Maestro.fm as content to support and market Defendant Maestro's social networking and streaming music services.

23. Upon information and belief, Defendant Danesc accessed, reproduced, and provided the Photographs for Maestro's use.

24. Upon information and belief, Defendant Danesc had both the legal right and the ability to stop Defendant Maestro's direct infringement of the Photographs.

25. Upon information and belief, Defendant Danesc gained a direct financial benefit from Defendant Maestro's direct infringement of the Photographs.

26. Upon information and belief, Defendants Logan and Escobar knew of Defendant Maestro's possession of specific infringing material but failed to purge such material.

27. Upon information and belief, as Chief Executive Officer of Defendant Maestro, Defendant Logan had both the legal right and the ability to stop Defendant Maestro's direct infringement of the Photographs.

28.     Upon information and belief, as Chief Technology Officer of Defendant Maestro, Defendant Escobar had both the legal right and the ability to stop Defendant Maestro's direct infringement of the Photographs.

29.     Upon information and belief, as Chief Executive Officer of Defendant Maestro, Defendant Logan gained a direct financial benefit from Defendant Maestro's direct infringement of the Photographs.

30.     Upon information and belief, as Chief Technology Officer and Secretary of Defendant Maestro, Defendant Escobar gained a direct financial benefit from Defendant Maestro's direct infringement of the Photographs.

31.     The Photographs in perspective, orientation, positioning, lighting and other details are entirely original, distinctive, and unique. As such, the Photographs are subject matter protectable under the Copyright Act.

32.     Oppenheimer is and always has been the sole proprietor of all rights, title, and interest in and to the copyrights in the Photographs.  Oppenheimer is the author of the Photographs, and is the owner of the copyrights therein pursuant to 17 U.S.C. § 201.

33.     Oppenheimer never authorized the Defendants to reproduce, display, or distribute the Photographs.

34. Oppenheimer complied with all respects with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as amended, and all other laws and regulations governing copyrights and secured the exclusive rights and privileges in and to the copyrights for the Photographs.

35. The Register of Copyrights for the U.S. Copyright Office issued to Oppenheimer the following Certificates of Registration for the copyrights to the Photographs:

- VA 1-700-944, effective January 31, 2010;
- VA 1-701-181, effective January 30, 2010;
- VA 1-703-841, effective January 31, 2010;
- VA 1-705-580, effective March 7, 2010;
- VA 1-708-779, effective February 3, 2010;
- VA 1-701-708, effective February 6, 2010;
- VA 1-709-923, effective April 3, 2010;
- VA 1-724-429, effective June 27, 2010;
- VA 1-732-785, effective August 30, 2010;
- VA 1-762-825, effective January 20, 2011;
- VA 1-772-539, effective April 5, 2010;

- VA 1-778-968, effective April 2, 2010;
- VA 1-781-500, effective July 7, 2011;
- VA 1-796-199, effective March 25, 2011;
- VA 1-799-887, effective June 29, 2011;
- VA 1-800-770, effective February 2, 2012;
- VA 1-801-395, effective July 7, 2011;
- VA 1-838-739, effective November 29, 2012;
- VA 1-881-345, effective January 9, 2012;
- VAu 1-050-417, effective November 22, 2010;
- VAu 1-051-415, effective December 27, 2010;
- VAu 1-057-572, effective November 15, 2010;
- VAu 1-058-547, effective February 22, 2011;
- VAu 1-069-656, effective June 18, 2011;
- VAu 1-073-141, effective July 20, 2011;
- VAu 1-073-955, effective August 3, 2011;
- VAu 1-080-482, effective October 6, 2011;
- VAu 1-082-511, effective October 29, 2011;
- VAu 1-092-902, effective February 17, 2012;

- VAu 1-102-552, effective June 13, 2012; and

- VAu 1-108-074, effective July 16, 2012.

## FIRST CAUSE OF ACTION

Copyright Infringement – 17 U.S.C. §§ 101 *et seq.*

36.   Oppenheimer re-alleges and incorporates by reference paragraphs 1 through 35 above.

37.   The Defendants violated Oppenheimer's exclusive rights granted in 17 U.S.C. § 106, specifically his exclusive right to: (1) reproduce the copyrighted work in copies; (2) prepare derivative works based on the copyrighted work; (3) distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; and (4) display the copyrighted work publicly.

38.   Upon information and belief, as the Defendants began to reproduce, display, and distribute the Photographs in 2012, and have continued to reproduce, display, and distribute the Photographs at least until October 2014, all claims of infringement are within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b).

39.   As a direct and proximate result of their wrongful conduct, the Defendants have realized and continue to realize profits and other benefits

rightfully belonging to Oppenheimer for the Photographs. Accordingly, Oppenheimer is entitled to and seeks an award of actual damages and profits pursuant to 17 U.S.C. § 504(b).

40. In the alternative, Oppenheimer is entitled to and seeks statutory damages for the Defendants' infringements of the Photographs, including attorneys' fees and costs, pursuant to 17 U.S.C. §§ 504(c)(1) and 505.

41. The infringements by the Defendants were willful and performed with knowledge that the reproduction, display, and distribution of the Photographs was unauthorized; Oppenheimer is therefore entitled to the recovery of enhanced statutory damages pursuant to 17 U.S.C. 504 (c)(2).

42. Despite the copyright notice on each of the Photographs, Defendant Danesc induced, caused, and materially contributed to the direct copyright infringements by Defendant Maestro, making Defendant Danesc contributorily liable for the infringements.

43. As Defendant Danesc had both the legal right and the ability to stop Defendant Maestro's direct infringement of the Photographs, and gained a direct financial benefit from Defendant Maestro's direct infringement of the Photographs, Defendant Danesc is vicariously liable for the infringements.

44. As Defendants Logan and Escobar knew of Defendant Maestro's possession of specific infringing material but failed to purge such material, they contributed to direct infringement by Defendant Maestro, making them contributorily liable for the infringements.

45. As Defendants Logan and Escobar had both the legal right and the ability to stop Defendant Maestro's direct infringement of the Photographs, and each gained a direct financial benefit from Defendant Maestro's direct infringement of the Photographs, Defendants Logan and Escobar are vicariously liable for the infringements.

## SECOND CAUSE OF ACTION

Digital Millennium Copyright Act Violations – 17 U.S.C. §§ 1201 *et seq.*

46. Oppenheimer re-alleges and incorporates by reference paragraphs 1 through 35 above.

47. The copyright notices on and adjacent to each of the Photographs constitute copyright management information pursuant to 17 U.S.C. § 1202(c)(2), (3) and (7).

48. Upon information and belief, the Defendants, without the authority of Oppenheimer or the law, intentionally removed either all or part of the copyright notices from, then distributed, one hundred and forty-seven of the Photographs.

49. The Defendants distributed these altered versions of the Photographs knowing that the copyright notices had been removed or altered, and knowing or having reasonable grounds to know that such removal or alteration would induce, enable, facilitate, or conceal copyright infringement in violation of 17 U.S.C. § 1202(b).

50. As a direct and proximate result of the Defendants' wrongful conduct, Oppenheimer has suffered damages and so is entitled to the remedies set forth under 17 U.S.C. § 1203.

51. Specifically, Oppenheimer is entitled to and seeks actual damages pursuant to 17 U.S.C. § 1203(c)(2).

52. In the alternative, Oppenheimer is entitled to and seeks statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), and costs of litigation and attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4-5).

## **PRAYER FOR RELIEF**

WHEREFORE, Oppenheimer prays that this Honorable Court:

1. Issue an order that the Defendants' unauthorized conduct violates Oppenheimer's rights under the Federal Copyright Act at 17 U.S.C. §101, et seq.;

2. Order the Defendants to account to Oppenheimer for all gains, profits, and advantages derived from the Defendants' infringements of the Photographs;

3. Order the Defendants to pay Oppenheimer all profits and damages in such amount as may be found pursuant to 17 U.S.C. § 504(b) (with interest thereon at the highest legal rate) for the Defendants' infringements of the Photographs; alternatively, maximum statutory damages in the amount of $30,000 for each infringement of the Photographs pursuant to 17 U.S.C. § 504 (c)(1); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

4. Award Oppenheimer maximum statutory damages in the amount of $150,000 for each of the Defendants' infringements of Oppenheimer's copyrights in the Photographs pursuant to 17 U.S.C. § 504 (c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

5. Order that Defendant Danesc is contributorily liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

6. Order that Defendant Logan is contributorily liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

7. Order that Defendant Escobar is contributorily liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

8.  Order that Defendant Danesc is vicariously liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

9.  Order that Defendant Logan is vicariously liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

10. Order that Defendant Escobar is vicariously liable for the direct infringements of Oppenheimer's copyrights in the Photographs;

11. Award Oppenheimer actual damages suffered and profits for each violation of 17 U.S.C. § 1202 (a) and (b), pursuant to 17 U.S.C. § 1203(c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

12. Award Oppenheimer maximum statutory damages in the amount of $25,000 for each violation of 17 U.S.C. § 1202 (a) and (b), pursuant to 17 U.S.C. § 1203(c)(3)(B); or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

13. Order the Defendants to pay Oppenheimer his costs of litigation and reasonable attorneys' fees in this action, pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203;

14. Order the Defendants to deliver to Oppenheimer all copies of the Photographs and all other materials containing such infringing copies of the Photographs in their possession, custody or control;

15. Order the Defendants, their agents, and servants to be enjoined during the pendency of this action and permanently from infringing the copyrights of Oppenheimer in any manner and from reproducing, distributing, displaying, or creating derivative works of the Photographs; and

16. Order such other and further relief as this Honorable Court deems just and equitable.

**Oppenheimer demands a jury trial on all of the foregoing counts.**

This 23rd day of December, 2014.

                              Respectfully submitted,

                              **LAW OFFICE OF CAROLYN E. WRIGHT, LLC**

                              _____
                              EVAN A. ANDERSEN
                              Georgia Bar No. 377422
                              CAROLYN. E. WRIGHT
                              Georgia Bar No. 777718

P.O. Box 250208
Atlanta, GA  30325
404-496-6606 (telephone)
775-580-7322 (facsimile)
evan@photoattorney.com

*Counsel for Plaintiff Oppenheimer*

16

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.C**

Counsel for Oppenheimer hereby certifies that this pleading was prepared in Times New Roman font, 14 point, in compliance with Local Rule 5.1.C.

This 23rd day of December, 2014.

                                        Respectfully submitted,

                                        **LAW OFFICE OF CAROLYN E. WRIGHT, LLC**

                                        _____
                                        EVAN A. ANDERSEN
                                        Georgia Bar No. 377422

P.O. Box 250208
Atlanta, GA  30325
404-496-6606 (telephone)
775-580-7322 (facsimile)
evan@photoattorney.com

*Counsel for Plaintiff Oppenheimer*